1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD L. EDWARDS,       ) | 1:09cv01002 DLB |
|       ) | |
|       ) | |
|      Plaintiff,     ) | ORDER REGARDING PLAINTIFF'S |
|       ) | SOCIAL SECURITY COMPLAINT |
|    v.       ) | |
|       ) | |
| MICHAEL J. ASTRUE, Commissioner  ) | |
| of Social Security,     ) | |
|       ) | |
|      Defendant.   ) | |
| _____) | |

### BACKGROUND

Plaintiff Clifford L. Edwards ("Plaintiff") seeks judicial review of a final decision of the
Commissioner of Social Security ("Commissioner") denying his application for disability
insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before
the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable
Dennis L. Beck, United States Magistrate Judge.

### FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on February 1, 2006, alleging disability since April 1, 2001,
due to previously broken hips and pancreatitis.  AR 71-72, 91-98.  After Plaintiff's application
was denied initially and on reconsideration, he requested a hearing before an Administrative Law

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

Judge ("ALJ").  AR 39-43, 45-48, 51.  On April 16, 2008, ALJ Bernard A. Trembly held a hearing.  AR 18.  He denied benefits on May 29, 2008.  AR 10-17.  The Appeals Council denied review on April 9, 2009.  AR 1-3.

Hearing Testimony

On April 16, 2008, ALJ Trembly held a hearing in Bakersfield, California.  Plaintiff appeared with his attorney, Rosemary Abarca.  AR 18.

Plaintiff testified that he was born in 1964 and graduated from high school.  He is not married and did not have children.  Plaintiff last worked in June 2001 in landscaping.  He had to stop working when he injured his back and neck on the job.  AR 22-23.  Plaintiff also fractured his hips in 1979 when he was roller skating.  His hips still cause a lot of pain.  AR 23.  He also still has problems with his back.  AR 23.  Plaintiff explained that he has the most pain in his stomach from chronic pancreatitis, which began in April 2002 and required his hospitalization for 29 days.  AR 24.

Plaintiff testified that he wanted to work, but he gets sick a lot.  He can't go for more than a few weeks without waking up with a "real bad stomach ache and hurting."  When he is in that much pain, he cannot work.  AR 25.  He tries to "be careful" with his pain medication, but he's in pain a lot.  He explained that he cannot work because he doesn't know what brings on the pain, although he thinks it is stress related.  AR 26.  Plaintiff thought he would miss about three to four days a month because of his pancreatitis.  AR 28.

Plaintiff also has diabetes, though he testified that for the last year and a half, when he started insulin, his sugar levels have been under control.  AR 26.  He sometimes has to take medication for triglycerides, and the medication makes him feel flush and itchy.  AR 27.

When questioned by his attorney, Plaintiff explained that when his pancreatitis flares up, he usually won't seek treatment until he's been in pain for a week because they often can't do anything to help him.  AR 28-29.  The longest flare-up, which was in December, lasted about two weeks.  He went to the emergency room and underwent testing.  AR 29.  His shortest flare-up lasts for about a day to a day and a half.  During a flare-up, he stays in bed unless he has to use

the restroom.  He takes Vicodin for the pain.  AR 30.  Although surgery has been recommended, Plaintiff chose not to have surgery because of the chance that the pain could return.  AR 32.

Plaintiff has had an epidural in his hip and he does swimming therapy three days a week. AR 31.  He also has back pain that he tries to ignore because the pain in his stomach is greater, though he isn't sure if the pain is from his back or stomach.  AR 33.  Plaintiff needs to lay down everyday and testified that he spends most of the day lying down.  AR 33.

Medical Record

Plaintiff was diagnosed with diabetes mellitus in early 2001.  In April 2001, Jorge E. del Toro, M.D., noted that Plaintiff was placed on medication though he had not been checking his blood sugars and had not been given instructions on how to do so.  AR 346.

In August 2001, Plaintiff was having hypoglycemic episodes.  Dr. del Toro adjusted his medications.  AR 344.

In November 2001, Dr. del Toro noted that Plaintiff's diabetes was extremely well controlled.  AR 343.

In February 2002, Dr. del Toro noted that Plaintiff's diabetes was well controlled and his hypertension was well controlled with exercise.  AR 343.

On April 9, 2002, Plaintiff was admitted to Mercy Hospital in Bakersfield after complaining of stomach pain with nausea, vomiting and fever.  He was admitted with a diagnosis of acute pancreatitis and diabetic ketoacidosis.  On the second day of hospitalization, Plaintiff was notably lethargic and confused.  He was intubated secondary to respiratory failure thought to be secondary to sepsis.  By the fourth day of hospitalization, his diabetic ketoacidosis and pancreatitis began to improve.  Plaintiff was extubated on the ninth day, though he remained confused and feverish.  A CT scan of his abdomen showed a pseudocyst.  Plaintiff improved and was released after 21 days of hospitalization.  He was instructed to eat a low fat, low cholesterol diet, take his medications, have a follow up CT scan, see surgeon regarding possible internal drainage and follow up with his primary care physician.  AR 125-129.

On May 9, 2002, Plaintiff returned to Dr. del Toro.  He continued to have weakness and bloating, as well as difficulty eating and associated nausea.  His glucose appeared to be well

controlled.  It was very difficult to palpate Plaintiff's abdomen because of his obesity, though Dr. del Toro noted tenderness in the epigastric area.  Dr. del Toro ordered additional testing.  AR 341-342.

On May 20, 2002, Plaintiff saw Dr. del Toro in follow-up.  He reported that his eating and strength had improved and that he was feeling much better.  Dr. del Toro indicated that Plaintiff needed to see a gastroenterologist.  AR 337.

On July 11, 2002, Plaintiff reported that he felt uncomfortable whenever he ate.  Overall, he was eating a lot better.  There was no organomegaly or tenderness in his abdomen.  AR 339.

On July 25, 2002, Plaintiff told Dr. del Toro that he was feeling better than he had in a "substantial period of time."  There were no masses or tenderness in his abdomen.  A CT scan revealed a very large pancreatic pseudocyst extending into the left pericolic gutter.  AR 338, 395.

On August 23, 2002, Plaintiff reported to Dr. del Toro that he was doing extremely well.  He was eating better and feeling better.  His diabetes was well controlled and his pancreatic pseudocyst was asymptomatic.  AR 336.

Plaintiff underwent a Qualified Medical Examination on October 15, 2002.  Plaintiff told Mohinder Nijjar, M.D., that he injured his back while he was trying to put a heavy container into a trash compacter.  On examination, Plaintiff's spine showed a slightly straightened curvature and mild to moderate paraspinal muscle spasm.  There was slight tenderness over the cervical spine area and range of motion was limited.  There was also straightening of the lumbar spine with slight tenderness over L4-S1.  Plaintiff had paraspinal muscle spasms in the lumbar spine and slight tenderness over the sacroiliac joints on both sides.  He was able to walk without a limp and stand on his toes and heels.  He had difficulty stabilizing in both positions, however.  Plaintiff also had difficulty squatting.  AR 214-219.

Dr. Nijjar diagnosed cervical strain with residual restricted range of motion and lumbar strain with residual stiffness, both of which resulted from Plaintiff's work accident in June 2001.  Dr. Nijjar believed that Plaintiff was permanent and stationary.  He further opined that Plaintiff could not perform heavy work and that he lost 50 percent of his pre-injury capacity to bend, stoop, lift, pull, push or climb.  Dr. Nijjar believed that Plaintiff would need anti-inflammatory

medication from time to time.  If his symptoms greatly worsened, Dr. Nijjar noted that Plaintiff may be a candidate for physical therapy.  Plaintiff was not a candidate for surgery.  AR 219-220.

On November 8, 2002, Dr. del Toro noted that the CT scan showed that although the pseudocyst had decreased in size, it was still quite sizable.  He recommended a surgery consultation.  Plaintiff's diabetes was well controlled.  AR 335.

On January 10, 2003, Plaintiff saw Dr. del Toro, who noted that his pseudocyst was stable and totally asymptomatic and his diabetes was very well controlled.  Dr. del Toro noted that the surgeon did not perform surgery since Plaintiff was asymptomatic.  He decided to continue to observed Plaintiff.  AR 332.

On January 27, 2003, Plaintiff saw Alan Sanders, M.D., for a Qualified Medical Examination.  Plaintiff reported that his neck was his worst problem, followed by his back.  On examination, Plaintiff had a normal gait, could toe and heel walk and could squat fully.  There was no tenderness to palpation in his lower back and he had full range of motion.  Plaintiff had no tenderness to palpation in his cervical spine and had full range of motion.  There was a negative response to compression/distraction tests of the cervical spine and a valsalva maneuver failed to produce symptoms.  Plaintiff complained of discomfort and pain on the extremes of motion of the hips.  Dr. Sanders diagnosed chronic residual cervical and lumber spondylosis as per Plaintiff's history.  He had not reviewed any medical records.  Dr. Sanders believed that Plaintiff had been permanent and stationary since October 2001and did not believe that physical therapy was providing any benefit.  AR 270-280.

On April 11, 2003, Plaintiff saw Dr. del Toro and indicated that he had no symptoms related to the pseudocyst.  His diabetes was out of control and Dr. del Toro changed his medication.  AR 335.

On May 8, 2003, Plaintiff saw Dr. del Toro in follow-up.  A CT scan showed a slight decrease in the size of the pancreatic pseudocyst.  Plaintiff's diabetes was out of control, though asymptomatic.  Dr. del Toro increased Plaintiff's Glucophage.  AR 331, 398.

On July 9, 2003, Plaintiff told Dr. del Toro that his abdominal pain has been increasing. He was eating well and had no fever, diarrhea, nausea or vomiting.  On examination, there was very slight epigastric tenderness subjectively.  Dr. del Toro ordered testing.  AR 331.

On July 16, 2003, Plaintiff returned Dr. del Toro for reevaluation.  Plaintiff noted that the pain had decreased.  His labs were normal.  Dr. del Toro found that his pseudocyst was under control.  AR 330.

On August 21, 2003, Plaintiff presented to Dr. del Toro with elevated blood glucose levels.  Dr. del Toro believed that the elevated levels were secondary to the epidural injections he was receiving.  AR 330.

On January 20, 2004, Plaintiff began treatment at Kaiser Permanente, with Nurse Practitioner Eileen McDermott.  Plaintiff complained of stomach pain for the past few days that was now very severe.  He also complained of nausea and elevated blood sugars.  On examination, Plaintiff had tenderness to palpation at the mid of the gastric area and mid abdomen.  Plaintiff was diagnosed with diabetes and abdominal or mid epigastric pain, possible PUD rule out cholelithiasis.  Laboratory testing was ordered and he was given medication.  AR 494-495.

Plaintiff returned to Nurse McDermott on January 27, 2004, for follow-up.  Plaintiff continued to have soreness in the upper left quadrant and he was referred to a GI specialist.  He was also diagnosed with diabetes, hypertriglyceridemia, hyperlipidemia and chest pain.  AR 498-499.

On September 3, 2004, Plaintiff saw Nurse McDermott and indicated that he had a few episodes of epigastric pain with radiation to his pack.  Plaintiff had been released to return to work but he did not feel like he could perform his job.  On examination, his abdomen was obese and soft, with some tenderness in the mid abdomen just above the umbilicus.  There were no appreciable masses, no organomegaly, no guarding and no rebound.  Degrasia Howard, M.D., noted that Plaintiff's pancreatic pseudocyst is decreasing, down to 6.7 cm in diameter from 10 cm in diameter.  Plaintiff's episodes of epigastric pain may well be related to this, especially if

his triglycerides go up.  Dr. Howard put Plaintiff on pancreatic enzymes and encouraged him to contact state human resources to find out about training for different jobs.  AR 510-511.

On May 31, 2004, Plaintiff returned to Kaiser and complained of a stomach ache for the past three days.

An October 29, 2004, CT scan showed a very slight decrease in the size of the pseudocyst.  AR 490.

On January 26, 2005, Plaintiff saw Nurse McDermott for a diabetes follow-up and complained of chronic stomach pain.  Plaintiff's abdomen was soft with generalized tenderness overall.  He was diagnosed with diabetes, hyperlipidemia, lightheadedness, microalbuminuria and constipation.  AR 515-516.

Plaintiff saw Dr. Howard on February 14, 2005.  Dr. Howard noted that Plaintiff's cyst has been stable with a slight decrease in size, though the probability of it totally resolving was very small.  Plaintiff had intermittent abdominal pain and sometimes has acute bouts of severe abdominal pain.  On examination, Plaintiff was frustrated because he has bouts of significant pain two to three times a week that make it difficult for him to hold down a job.  Dr. Howard noted that it is not uncommon for patients with chronic relapsing pancreatitis to have these abdominal episodes.  Plaintiff was tender in the epigastric area over the pancreatic area.  There was no appreciable mass and no guarding or rebound.  Dr. Howard diagnosed Plaintiff with chronic pancreatic pseudocyst with enzyme abnormality of the pancreas, related to his chronic relapsing pancreatitis.  Dr. Howard noted that this is all related to his elevated triglycerides.  He also noted that Plaintiff's chronic relapsing condition makes it difficult for him to be employed. Dr. Howard ordered a CT scan and suggested that an ultrasound may be necessary to determine whether a drainage procedure would be beneficial.  AR 517-518.

A February 21, 2005, CT scan showed that Plaintiff's pseudocyst was stable.  AR 489.

On October 5, 2005, Plaintiff saw Nurse McDermott and complained of continuing abdominal pain as well as nausea and vomiting on and off.  He described muscle-cramping pain in the upper right quadrant.  Plaintiff had generalized tenderness over the abdomen.  His diabetes was not controlled.  Nurse McDermott indicated that she needed to speak with Dr. Howard for

Plaintiff's abdominal pain, decreased appetite and 10 pound weight loss in February.  AR 519-520.

Plaintiff saw Dr. Howard on October 10, 2005.  Plaintiff reported some difficulty finding work or keeping work because of his abdominal pain and frequent bouts of severe pain.  Plaintiff had lost 12 to 15 pounds, which may or may not be related to his pancreatitis.  Plaintiff noted his level of pain at a 1 to 2 out of 10.  Plaintiff was tender in the left and right flank and in the midepigastric area.  Dr. Howard ordered a CT scan and encouraged Plaintiff to think about disability.  Dr. Howard listed Plaintiff's other medical problems and believed that this was "as improved as he can get."  AR 521-522.

An October 13, 2005, CT scan of Plaintiff's abdomen showed that the pseudocyst slightly decreased in size.  AR 488.

Plaintiff saw Nurse McDermott on December 13, 2005.  His diabetes was better controlled.  AR 526-527.

Plaintiff returned to Dr. Howard on February 2, 2006.  Plaintiff's triglycerides showed a "marked improvement" and his diabetes was under better control.  Plaintiff still had abdominal pain and nausea at times and Dr. Howard noted that some of his symptoms sounded like gastric emptying problems.  On examination, Plaintiff had some epigastric tenderness, more towards the right than the left.  Dr. Howard believed that his pancreatitis and pseudocyst may improve given his improved hypertriglyceridemia.  AR 528-529.

A February 15, 2006, gastric emptying study was normal.  AR 585.

An April 21, 2006, x-ray of Plaintiff's hips showed mild bilateral hip osteoarthritis.  AR 486.

On May 2, 2006, Plaintiff saw Alan Inocentes, M.D., for exacerbation of bilateral hip pain.  AR 618-619.  On examination, Plaintiff had active range of motion in both hips with mildly positive Fabere's bilaterally.  Dr. Inocentes diagnosed chronic bilateral hip pain secondary to underlying degenerative arthritis.  Mild L5-S1 degenerative disc disease may have caused the radiating pain down the left lower extremity.  Dr. Inocentes recommended that Plaintiff be

encouraged to start an exercise program.  He could taken Vicodin as needed for pain.  AR 618-619.

Plaintiff returned to Dr. Howard on May 3, 2006.  His diabetes was in much better control since he started on insulin.  Plaintiff was doing good overall, though he still has episodes of severe abdominal pain and discomfort that kept him from sleeping.  He takes one Vicodin at bedtime and sometimes during the day on a bad day.  The most he ever takes is four a day. Plaintiff had some right lower quadrant tenderness.  Dr. Howard noted that Plaintiff's cyst has been progressively getting smaller and that he has been stable.  AR 620-621.

On May 18, 2006, State Agency physician K. M. Quint, M.D., completed a Physical Residual Capacity Assessment form.  Dr. Quint opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  Plaintiff had no further limitations.  Dr. Quint noted that Plaintiff's pain was not severe and that his weight gain indicates that his GI tract is working well.  Dr. Quint also noted that Plaintiff's activities were likely more limited by his weight than his pancreas.  AR 468-475.  This assessment was affirmed on January 10, 2007.  AR 646.

A June 13, 2006, CT scan of Plaintiff's abdomen showed a marginal decrease in the size of the pseudocyst.  It was still contiguous with the posterior aspect of his stomach.  AR 484.

Plaintiff returned to Dr. Inocentes on June 22, 2006.  Plaintiff was taking prescription Motrin three times a week and Vicodin about three to four times per week.  He was taking part in an aquatics program which has helped overall.  Plaintiff indicated that he was better, though he still had occasional exacerbation of pain that required medication.  Dr. Inocentes instructed Plaintiff to continue the aquatics program and medication as needed.  AR 622-623.

On July 17, 2006, Plaintiff saw Dr. Howard with complaints of periodic abdominal pain. If Plaintiff tries to push himself to do anything, he usually has significant pain.  Plaintiff's hips cause pain if he stands too long and he has occasional spasms in his back if he moves or turns in a certain way.  Plaintiff did not think he had the stamina to do any significant amount of work. Plaintiff had some tenderness over the area of the tail of the pancreas, but there were no appreciable masses or fullness in that area.  Dr. Howard noted that Plaintiff has a short duration

9

of energy or stamina for prolonged standing, sitting, lifting or moving.  Plaintiff could not do very much lifting because of his back and hips.  His pseudocyst has not changed very much in size.  Plaintiff was instructed to continue with his current treatment regimen.  AR 624-625.

On October 26, 2006, Plaintiff saw Thin Thin Han, M.D., in follow-up after seeing Dr. Han in urgent care a few days ago for abdominal pain.  Currently, Plaintiff's abdominal pain was getting better.  He advised Plaintiff to follow-up with Dr. Howard.  AR 627-628.

Plaintiff saw Dr. Howard on October 30, 2006.  Plaintiff's triglycerides were improving though he was still having intermittent brief bouts of pancreatitis.  Plaintiff's diabetes was under better control though he still had decreased stamina overall.  On examination, Plaintiff had tenderness in the epigastric and right upper quadrant area of the tail of the pancreas.  Dr. Howard noted that Plaintiff was "starting to feel some better" and used his pain medications very sparingly.  Plaintiff's poor stamina was probably related to his diabetes and hip and low back problems, which were not improving.  AR 629-630.

On August 30, 2007, Plaintiff underwent a left hip steroid injection.  AR 748

Plaintiff saw Dr. Howard on October 8, 2007, for complaints of lower abdominal pain that has been increasing over the past month.  He has back pain related to the abdominal pain and his pain medication was not providing relief.  Plaintiff rated the pain at an 8 out of 10, sometimes higher.  Plaintiff was tender in the right upper quadrant and the left lower quadrant.  AR 681.  Dr. Howard noted that Plaintiff's pseudocyst could be aggravated by his gall stones and that the tenderness in the left lower quadrant may be diverticulosis.  AR 681-682.

A September 20, 2007, abdominal ultrasound showed diffuse fatty infiltration of the liver and gall stones.  AR 752.

An October 16, 2007, CT scan showed diffuse fatty infiltration of the liver and an unchanged pseudocyst.  AR 745.

On December 11, 2007, Plaintiff was seen in the emergency room for stomach pain, chest pain and depression.  AR 650-659.

Plaintiff saw Dr. Howard on February 20, 2008.  Plaintiff was having less subjective pain but was still quite tender in the right upper quadrant.  He was doing much better overall.  AR 670-671.

On February 25, 2008, Plaintiff saw Kaiser physician Mark Mishkind, M.D., for complaints of abdominal pain. Plaintiff had tenderness in the right and left upper quadrant, but no mass, rigidity or rebound.  Plaintiff was walking with a cane.  Dr. Mishkind recommended that Plaintiff's gallbladder be removed because of the risk of it causing more pancreatitis.  He also recommended surgical drainage of the pseudocyst.  AR 666

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of pancreatitis secondary to a pancreatic pseudocyst, insulin dependent diabetes mellitus and previous bilateral hip fracture. AR 12.  Despite these impairments, the ALJ found that Plaintiff could perform the full range of sedentary work.  AR 12.  With this RFC, Plaintiff could not perform his past work but could perform a significant number of jobs in the national economy.  AR 16-17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," _Richardson v. Perales_, 402 U.S. 389, 402 (1971), but less than a preponderance.  _Sorenson v. Weinberger_, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  _Richardson_, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. _Jones v. Heckler,_ 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  _E.g._, _Burkhart v. Bowen_, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (pancreatitis secondary to a pancreatic pseudocyst, insulin dependent diabetes mellitus and previous bilateral hip fracture) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but can (5) perform a substantial number of jobs in the national economy.  AR 12-17.

Here, Plaintiff argues that the ALJ (1) erred in failing to give controlling weight to Dr. Howard's opinion; and (2) did not properly analyze his subjective complaints.

**DISCUSSION**

A.    Dr. Howard's Opinion

Plaintiff first argues that the ALJ failed to provide sufficient reasons to reject Dr. Howard's opinion that Plaintiff suffered from pancreatic attacks two to three times per week and that he would therefore be precluded from work.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. _Reddick v. Chater_, 157 F.3d 715, 725 (9th Cir.1998); _Lester v. Chater_, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  _Lester_, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  _Id._ (quoting _Murray v. Heckler_, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  _Magallanes  v. Bowen_, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  _Embrey v. Bowen_, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  _Lingenfelter v. Astrue_, 504 F.3d 1028 (9th Cir. 2007).

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the

1   extent to which the physician is familiar with disability programs and evidentiary requirements.

2   20 C.F.R. § 404.1527(d)(3)-(6).   Even when contradicted by an opinion of an examining

3   physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to

4   deference."   SSR 96-2p; _Orn v. Astrue_, 495 F.3d 625, 632-633 (9th Cir. 2007).   "In many cases, a

5   treating source's medical opinion will be entitled to the greatest weight and should be adopted,

6   even if it does not meet the test for controlling weight."   SSR 96-2p; _Orn_, 495 F.3d at 633.

7          However, to be given controlling weight, a medical opinion must concern an area of

8   proper consideration. Medical opinions are defined as "statements from physicians and

9   psychologists or other acceptable medical sources that reflect judgments about the nature and

10  severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

11  still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R. §

12  404.1527(a)(1).   Where the statement involves an issue reserved to the Commissioner, the

13  statement is not entitled to controlling weight.   SSR 96-5p.   For example, a treating source's

14  opinion as to whether a claimant is "disabled" or "unable to work" is never entitled to controlling

15  weight or given special significance.   SSR 96-5p.   It is beyond a physician's expertise to say

16  whether or not a claimant seeking disability benefits can or cannot work.   20 C.F.R. §§

17  404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision

18  about whether you meet the statutory definition of disability.   In so doing, we review all of the

19  medical findings and other evidence that support a medical source's statement that you are

20  disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not

21  mean that we will determine that you are disabled.")

22         Therefore, Dr. Howard's opinion that Plaintiff could not work because of his episodes of

23  pancreatitis was not entitled to controlling weight.   The ALJ correctly noted that the opinion

24  "concern[ed] issues specifically reserved to the Commissioner."   AR 16.   _Thomas v. Barnhart_,

25  278 F.3d 947, 956 (9th Cir.2002) ("In _Morgan_, we held that 'the opinion of the treating physician

26  is not necessarily conclusive as to either the physical condition or the ultimate issue of

27  disability.")

28

Moreover, Dr. Howard's opinion was little more than a reiteration of Plaintiff's subjective complaints.  During his February 15, 2005, visit, Plaintiff told Dr. Howard that he "has at least two to three times a week bouts of significant pain that make it difficult for him to be able to go and hold down a job."  AR 517.  Later in the report, Dr. Howard states that Plaintiff "will have flares of severe pain, making it difficult for him to be employed."  AR 517.  Objectively, although Plaintiff complained of pain on palpation, Dr. Howard described Plaintiff's cyst as "clinically stable with slight change in size, getting smaller on the last evaluation."  AR 517.  Indeed, Dr. Howard's most recent notes from February 2008 state that although Plaintiff was "quite tender in the right upper quadrant," he had less subjective pain and was doing "much better overall."  AR 670-671.

The ALJ's rejection of Dr. Howard's opinion was supported by substantial evidence and free of legal error.

B.     Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony.

In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  _See Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).  However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  _Morgan_, 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  _Id._  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  _Id._

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  _See_ 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see Daniels v. Apfel_, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or

between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." _Fair_, 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

Here, the ALJ first cited objective evidence that contradicted Plaintiff's allegation that he could not work primarily because of his stomach pain. For example, as Dr. Quint explained, Plaintiff's weight gain indicated that his gastrointestinal tract was working well. AR 16. Additionally, Plaintiff's cyst was decreasing over time. Elsewhere in the opinion, the ALJ explained that Plaintiff's cyst was often described as stable and asymptomatic. AR 14. The ALJ may consider the objective evidence so long as it is not the sole factor in discrediting a claimant's testimony. _Lester v. Chater_, 81 F.3d 821, 834 (9th Cir. 1996).

Similarly, despite Plaintiff's allegation that he has to lay down most of the day, the ALJ noted that Plaintiff's neurological examination showed normal muscle tone, normal sensation, normal strength and normal reflexes. _See eg. Meanel v. Apfel_, 172 F.3d 1111, 1115 (9th Cir. 1999) (explaining that a likely consequence of debilitating pain is inactivity, and a likely consequence of inactivity is muscle atrophy).

The ALJ next explained that Plaintiff uses his pain medications "very sparingly and only to control his symptoms." AR 16. Plaintiff's diabetes was well controlled with his current medication regimen, which has not changed significantly over the years. An ALJ may consider the type and effectiveness of medication in assessing a claimant's credibility. 20 C.F.R. § 404.1529(c)(3)(iv).

As to Plaintiff's hip pain, which he also alleged as a disabling condition, the ALJ noted that it has been treated primarily with exercises and an aquatic program. _Parra v. Astrue_, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to discount a claimant's testimony regarding severity of an impairment).

In his opening brief, Plaintiff contends that there is no evidence that additional treatment would have resolved his pain. He also argues that he sought "years of treatment, including hospitalizations, to help relieve his pain." Opening Brief, at 13. Although Plaintiff may interpret the evidence differently, it is the province of the ALJ to analyze the testimony. The ALJ's

credibility finding was sufficient to allow the Court conclude that the ALJ did not arbitrarily

discredit his testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

The ALJ's credibility analysis is supported by substantial evidence and free of legal error.

### **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by

substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

Clifford Edwards.


IT IS SO ORDERED.

**Dated:    July 22, 2010**          **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE